**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **FELIPE GOVEA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-07-CV-0716 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO:   Honorable Xavier Rodriguez**
**United States District Judge**

### Introduction

Plaintiff Felipe L. Govea brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Govea is not disabled for the purposes of the Social Security Act (the Act) and denying Govea's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI).  Govea asks the district court to reverse the Commissioner's decision and to render judgment in his favor.  In the alternative, Govea asks the district court to reverse the decision and remand the case for further proceedings.

After considering Govea's brief in support of his complaint,[1] the brief in support of the

---

[1]Docket entry # 14.

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

### Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

### Administrative Proceedings

Based on the record in this case, Govea exhausted his administrative remedies prior to filing this action in federal court.  Govea applied for DIB and SSI benefits on April 17, 2003, alleging disability beginning July 17, 2000.[4]  Govea's onset date corresponds to the day Govea injured his back while working as a cement finisher in the construction industry.  The Commissioner denied the applications initially and on reconsideration.[5]  Govea then asked for a

---

[2]Docket entry # 17.

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 67 (DIB) & 371 (SSI).

[5]*Id*. at pp. 27-28 (DIB)  & 373-74 (SSI).

hearing before an ALJ.[6]  A hearing was held on April 1, 2005.[7]  The ALJ issued a decision on

September 15, 2005, determining that Govea was insured for DIB until December 31, 2004 and

concluding that Govea is not disabled within the meaning of the Act.[8]  Govea asked for review of

the decision.  The Appeals Council denied the request for review after determining that no basis

existed for reviewing the ALJ's decision.[9]  Govea asked the Appeals Council to reopen the case

to consider additional evidence.  The Appeals Council refused to reopen the case on March 6,

2007, but extended the time for Govea to file a civil lawsuit.[10]  The ALJ's decision became the

final decision of the Commissioner for the purpose of the district court's review pursuant to 42

U.S.C. § 405(g).  Govea moved for leave to proceed in forma pauperis in this case on August 31,

2007.[11]  After I granted Govea's request, the clerk filed Govea's complaint for review of the

Commissioner's decision.[12]

### Issue Presented

Is the ALJ's decision that Govea is not under a "disability," as
defined by the Act, supported by substantial evidence and does the
decision comport with relevant legal standards?

---

[6]*Id*. at p. 53.

[7]*Id*. at pp. 440-57.

[8]*Id*. at pp. 16-24.

[9]*Id*. at p. 10.

[10]*Id*. at p. 10.

[11]Docket entry # 1.

[12]Docket entry # 3.

<u>**Analysis**</u>

**A. Standard of Review**

      In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

      If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17]  Where a claimant submits new evidence to the Appeals Council and the Appeals Council denies the claimant's request for review of the ALJ's

---

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[14]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16]*Martinez*, 64 F.3d at 173.

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

decision, the evidence submitted for the first time to the Appeals Council becomes part of the record to be reviewed by the reviewing court.[18]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[19]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[20]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[21]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[22]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous

---

[18]*See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (explaining that the district court must consider evidence submitted for the first time to the Appeals Council because the Appeals Council considered and evaluated the evidence, and thus the evidence constitutes evidence upon which the decision complained about is based).

[19]*Martinez*, 64 F.3d at 174.

[20]*Id.*

[21]42 U.S.C. § 1382(a)(1) & (2).

[22]42 U.S.C. § 1382c(a)(3)(A).

work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[23]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[24]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[25]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[26]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[27]  The second step involves determining whether the claimant's impairment is severe.[28]  If it is not severe, the claimant is deemed not disabled.[29]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[30]  If it meets or equals a listed impairment, the claimant is

---

[23]42 U.S.C. § 1382c(a)(3)(B).

[24]20 C.F.R. §§ 404.1520 and 416.920.

[25]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[26]20 C.F.R. §§ 404.1520 and 416.920.

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

deemed disabled without considering his age, education, or work experience.[31]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of his past work.[32]  If the claimant is still able to do his past work, the

claimant is not disabled.[33]  If the claimant cannot perform his past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities,

age, education, and work experience, to do other work.[34]  If the claimant cannot do other work,

he will be found disabled.  The claimant bears the burden of proof at the first four steps of the

sequential analysis.[35]  Once the claimant has shown that he is unable to perform his previous

work, the burden shifts to the Commissioner to show that there is other substantial gainful

employment available that the claimant is not only physically able to perform, but also, taking

into account his exertional and nonexertional limitations, able to maintain for a significant period

of time.[36]  If the Commissioner adequately points to potential alternative employment, the burden

shifts back to the claimant to prove that he is unable to perform the alternative work.[37]

## B. Findings and Conclusions of the ALJ

       In the instant case, the ALJ reached his decision at step five of the evaluation process.

---

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

[35]*Leggett*, 67 F.3d at 564.

[36]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[37]*Anderson v. Sullivan*, 887 F.2d 630, 632-3 (5th Cir. 1989).

The ALJ first determined that Govea was insured for DIB through December 31, 2004.[38]  To be eligible for DIB, a person must be fully insured.[39]  Because Govea was insured through December 31, 2004, the ALJ considered whether Govea was disabled on or before that date in considering his eligibility for DIB.

At step one, the ALJ determined that Govea had not performed substantial gainful activity since his alleged onset date[40]—the date of his on-the-job back injury.  At step two, the ALJ determined that Govea has the following medically-determinable, severe impairment: status-post low-back injury, including pain.[41]  At step three, the ALJ determined that Govea's impairment does not meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1) prior to the date last insured.[42]  At step four, the ALJ assessed Govea's residual functional capacity as follows: Govea can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of six hours in an eight-hour day; sit for about six hours in an eight-our work day; and bend and stoop on a less-

---

[38]*See* SSA record, p. 16.

[39]*See* 20 C.F.R. § 404.110.  "To be fully insured [for DIB], a person needs at least six quarters of coverage, but not more than forty quarters of coverage."  Nat'l Org. of. Soc. Sec. Claimants Representatives, 1-2 Soc. Sec. Practice Guide § 2.03 (LexisNexis).  The formula for determining fully insured status is a little more complicated than that, but Govea does not challenge the Commissioner's determination about his date last insured.  "There are no eligibility period requirements for the receipt of SSI benefits." *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

[40]SSA record, pp. 17 & 23.

[41]*Id*. at pp. 17 & 23.

[42]*Id*. at pp. 19 & 23.

than-frequent basis.[43]  The ALJ also found that Govea requires the option to change position

from sitting to standing, or vice versa, as necessary to relieve pain.[44]  The ALJ determined that

Govea cannot perform his past relevant work.[45]  At step five, the ALJ considered Govea's age,

educational background, work experience, and residual functional capacity, and determined that

Govea is capable of making a successful adjustment to work that exists in significant numbers in

the national economy.[46]

**C.  Govea's Allegations of Error**

     Govea's first allegation of error.  After the Appeals Council denied Govea's request to

review the ALJ's decision, Govea submitted additional evidence—*i.e.*, medical records from the

Texas Department of Assistive and Rehabilitative Services at pages 388-420 of the record.  In his

first allegation of error, Govea asserts that the Commissioner's decision is not supported by

substantial evidence because the Appeals Council failed to properly consider the new evidence.[47]

> When new evidence becomes available after the [Commissioner's] decision and
> there is a reasonable probability that the new evidence would change the outcome
> of the decision, a remand is appropriate so that this new evidence can be
> considered.  To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is
> "new" and "material" as well as a showing of "good cause" for failing to provide
> this evidence at the original proceedings. . . . Reviewing the materiality of new
> evidence requires . . . two separate inquiries: (1) whether the evidence relates to
> the time period for which the disability benefits were denied, and (2) whether
> there is a reasonable probability that this new evidence would change the outcome

---

[43]*Id.* at p. 23.

[44]*Id.*

[45]*Id.*

[46]*Id.* at p. 22.

[47]Docket entry # 14, p. 4.

of the [Commissioner's] decision.[48]

In this case, Govea contends the new evidence is new and material, but he has did not explain why.  After reviewing the evidence, I determine that some of the new evidence does not meet the materiality requirement because it does not relate to the applicable time period.

The timing aspect of materiality requires new evidence to relate to the time period for which benefits were denied.[49]  Here, the ALJ concluded that Govea was not under a disability "at any time from the alleged onset date through the date of this decision."[50]  Because Govea alleged an onset date of July 17, 2000 and the decision denying Govea's application is dated September 5, 2005, the "time period for which benefits were denied" is July 17, 2000 to September 5, 2005. Some of the evidence Govea submitted to the Appeals Council falls beyond this time period—specifically, the report of the February 24, 2006 office visit with Dr. James Dotter diagnosing Govea with chronic recurring major depression and prescribing anti-depressants;[51] and the March 3, 2006 report of psychological evaluation done by Dr. Sean G. Connolly, reporting that the office visit with Dr. Dotter was the only time Govea has seen a mental health professional, observing no impairment of reasoning or judgment, diagnosing Govea as suffering from major depressive disorder, single episode, moderate, and recommending Govea for vocational rehabilitative services.[52]

---

[48]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

[49]*See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

[50]SSA record, p. 24.

[51]*Id*. at pp. 388-89.

[52]*Id*. at pp. 394-98.

The remaining evidence—although relevant in terms of time—presents no reasonable probability of changing the outcome of the Commissioner's decision.  The clinic note of an emergency-room visit on November 5, 2002[53] is not evidence that would change the Commissioner's decision because the note shows no treatment other than pain medication.  The note indicates that Govea had run out of pain medication.  The clinic note of the emergency-room visit on November 10, 2003[54] is not evidence that would change the Commissioner's decision because the note indicates that Govea did not wait to see a doctor and thus received no treatment. The letters from Dr. Ray M. Freeman—Govea's treating chiropractor—to the insurer for Govea's workers' compensation benefits are not evidence that would change the Commissioner's decision for two reasons.  First, a chiropractor is not considered an acceptable medical source under the SSA's regulations.[55]  Second, the letters do not address Govea's ability to work.  The letter dated August 11, 2000 submitted claims for treatment and described Govea's treatment to that date. The letter did not address whether Govea can work, other than to state that Govea was required to perform light work.[56]  The letter dated September 6, 2000 reported the progress of

---

[53]*Id*. at p.405.

[54]*Id*. at p. 400.

[55]*See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (explaining that a chiropractor cannot not establish the existence of an impairment because a chiropractor is not considered an "acceptable source" under the SSA's regulations); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (determining that an ALJ has the discretion to determine the weight to give to a chiropractor's opinion because a chiropractor is not a medical source); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide medical opinions.").

[56]SSA record, p. 418.

conservative treatment for Govea's back injury and submitted claims for treatment, without addressing Govea's ability to work.[57]  The letter dated June 4, 2003 submitted claims for treatment and reported that the intensity of Govea's pain was significantly reduced.[58]  The letter dated July 2, 2003 reported that although the intensity of Govea's back pain had subsided, Govea complained about nagging pain and required treatment on an as-needed basis and submitted associated claims.  The letter did not address Govea's ability to work.[59]  Likewise, the letter to the Texas Workers' Compensation Commission, dated March 10, 2004, is not evidence that would change the Commissioner's decision because the letter addressed the denial of claims for treatment beyond Govea's "maximum medical improvement" date[60]—March 11, 2002[61]—and asked for permission to treat Govea on an as-needed basis.[62]  Dr. Freeman's statement supporting Govea's application for food stamps[63] is the only clear statement addressing Govea's ability to work.  In that statement, Dr. Freeman opined that Govea's back is permanently impaired,

---

[57]*Id*. at p. 416.

[58]*Id*. at p. 414.

[59]*Id*. at p. 413.

[60]The term "maximum medical improvement" is used by workers compensation statutes "to describe the dividing point between temporary and permanent disability. . . . Generally, the date of maximum medical improvement is the date after which further recovery from, or lasting improvement to, an injury or disease can no longer be anticipated, based upon reasonable medical probability."  Lee R. Russ, *Couch on Insurance* § 173:70 (3d ed.).  Once an injured worker reaches "maximum medical improvement," temporary income benefits end and he becomes eligible for impairment income benefits, based on the percentage of whole body impairment given to the employee at the date of "maximum medical improvement."

[61]SSA record, p. 222.

[62]*Id.* at p. 409.

[63]*Id*. at p. 415.

preventing him from working.  But because this opinion does not constitute a medical opinion

under the SSA regulations,[64] it is insufficient to create a reasonable probability for changing the

Commissioner's decision.  The Appeals Council did not err in refusing to reopen the case based

on the evidence Govea submitted after the hearing.

     Govea's second allegation of error.  In step five of the disability-determination process,

the ALJ found that Govea is not illiterate or unable to communicate in English.[65]  The ALJ

observed that Govea alleged a non-facility with the English language, but determined that the

"claim is flatly refuted by [Govea's] hearing testimony."[66]  In his second allegation of error,

Govea maintains that the ALJ improperly discounted his credibility[67] and failed to articulate

reasons for not believing his testimony.

     Because a credibility determination is an issue of fact before the ALJ,[68] the district court

must determine whether substantial evidence supports the ALJ's credibility finding.  "Since the

ability to speak, read and understand English is generally learned or increased at school, [the

Commissioner] may consider this an educational factor"[69] in applying the Medical-Vocational

Guidelines in step five of the disability-determination process.  In this case, the ALJ articulated

---

[64]*Diaz*, 59 F.3d at 313 ("[A] chiropractor's opinion is not a medical opinion.").

[65]SSA record, p. 22.

[66]*Id*. at p. 19.

[67]Docket entry # 14, p. 5.

[68]"In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true." Social Security Reg. 96-7p, *available at* www.ssa.gov.

[69]20 C.F.R. § 404.1564(b)(5) & 20 C.F.R. § 416.964(b)(5).

his reasons for not believing Govea's assertion that he is illiterate in English.  The following

excerpts from the ALJ's decision reflects the ALJ's reasoning:

> He also alleges a non-facility with the English language; however this claim is
> flatly refuted by his hearing testimony during which he responded—in
> English—to my questions, stating that he neither reads, writes, nor *speaks*
> English.  He testified to having been living in the United States for the last
> fourteen years, yet he also said that he began living in California in 1987, later
> moving to Victoria, Texas, which would appear to make the period he has lived in
> the country a little longer than the fourteen years he claimed.  He also has
> remarkably robust activities of daily living, as he testified that he regularly goes to
> socialize with friends and also to look for work and go out on jobs for cash-basis
> type work, including the physical labor type work mentioned above.  He has a
> valid Texas driver's license, owns his own car, and regularly drives himself
> around.
> ***
> He has been living in the United States for more than seventeen years, has a Texas
> driver's license, and has been able to travel freely and easily, including an
> interstate move from California to Texas.  Moreover, he testified satisfactorily in
> English at the hearing, responding in detail to my questions concerning his living
> status and work history.[70]

These excerpts show that the ALJ articulated reasons for his credibility assessment.  The ALJ's

assessment is supported by the record.  Nevertheless, the ALJ treated Govea as being limited in

English.  When the ALJ questioned the vocational expert about jobs a person with Govea's

limitations could perform, he included a limitation that the hypothetical claimant was "primarily

Spanish-speaking, with a little bit, minimal English understanding and communication ability."[71]

When the ALJ applied the Medical-Vocational Guidelines, he used Rule 202-17 as a guideline.

Rule 202-17 applies to a person who is "[l]imited or less—at least literate and able to

---

[70]SSA record, pp. 19 & 22.

[71]*Id*. at p. 452.

communicate in English" and dictates a finding of "not disabled."[72]  Because Rule

202.16—which applies to a person who is "[i]lliterate or unable to communicate in

English—also dictates a finding of "not disabled," the result would have been the same even if

Govea was illiterate in English.  The ALJ did not err in assessing Govea's credibility.

<u>Govea's third allegation of error</u>.  In his third allegation of error, Govea complains that

the ALJ failed to properly consider Dr. Freeman's testimony.  Govea argues that the ALJ was

required to analyze Dr. Freeman's testimony using the six factors required by the SSA

regulations.  Govea maintains the Commissioner's decision should be reversed because the ALJ

did not use the six factors.

The SSA regulations direct the ALJ to give more weight to opinions from a claimant's

treating sources than non-treating sources because treating sources are likely to be the doctors

most able to provide a detailed, longitudinal picture of a claimant's medical impairment(s).[73]  If

the ALJ does not give a treating doctor's opinion controlling weight, the ALJ must consider the

following six factors in determining how to weigh the opinion: (1) length of the treatment

relationship and the frequency of examination, (2) nature and extent of the treatment relationship,

(3) supportability, (4) consistency, (5) specialization, and (6) any other factor brought to the

SSA's attention, or of which the SSA is aware, which tends to support or contradict the

opinion.[74]  In this case, there are three reasons the ALJ was not required to analyze Dr. Freeman's

testimony using these factors.  First, although the SSA regulations require the Commissioner to

---

[72]20 C.F.R. pt. 404, subpt. P, appx. 2.

[73]*See* 20 C.F.R. § 404.1527(d).

[74]*See* 20 C.F.R. § 404.1527(d).

consider medical opinions,[75] a chiropractor is not an acceptable medical source under the SSA's regulations.[76]  The regulations do not require an ALJ to apply the factors to other medical evidence like Dr. Freeman's testimony.  Second, the ALJ's opinion does not indicate that he rejected Dr. Freeman's testimony.  The ALJ summarized the testimony as follows:

> The claimant's physician, Dr. Ray Freeman, D.C., testified that he has practiced for twenty-seven years in Victoria, Texas, where he has treated the claimant from July 18, 2000 to 2004.  He has suspected that the claimant has L5 lumbar nerve involvement, and nerve conduction studies showed a distinct difference between the claimant's left and right sides.  He said the claimant underwent surgery on October 25, 2001 for an L4-to-S1 fixation with instrumentation, after which he needed therapy, including strength training.  He saw the claimant in July 2000, at which time the claimant complained of numbness and tenderness in his left leg. Dr. Freeman said the claimant has a lot of "stenosing facet problems," with evidence of nerve-root compression.  He ultimately referred the claimant to Dr. Norvill.[77]

This passage does not indicate that the ALJ rejected Dr. Freeman's testimony.  Third, Dr. Freeman did not testify about Govea's ability to work.  The testimony described above summarized Govea's medical history and opined that Govea meets section 1.04 of Appendix 1, but it does not address Govea's ability to work.  Had the ALJ determined in step three that Govea's back impairment meets section 1.04, the ALJ would have concluded that Govea was disabled.  Govea, however, does not challenge the ALJ's step-three determination.

    Govea's fourth allegation of error.  On March 3, 2006, Dr. Connolly diagnosed Govea with major depressive disorder, single episode, chronic pain and borderline intellectual

---

[75]*See* 20 C.F.R. § 404.1527.

[76]*See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *Crawford*, 363 F.3d at 1160; *Walters*., 127 F.3d at 530; *Diaz*, 59 F.3d at 313.

[77]SSA record, p. 18.

functioning.[78]  In his fourth allegation of error, Govea complains that the ALJ's hypothetical

question to the vocational expert did not include all of his determinable non-exertional

impairments.[79]  Govea explained that the new evidence he submitted to the Appeals Council

confirmed borderline intellectual functioning and depression, but complained that the ALJ did

not include these impairments in the hypothetical question to the vocational expert.

     A proper hypothetical question posed to a vocational expert must reasonably incorporate

all of the disabilities recognized by the ALJ.[80]  Here, the ALJ was not required to incorporate

borderline intellectual functioning and depression in his hypothetical question because there was

no evidence of mental impairment in the record at the time of the hearing.  The ALJ was required

to incorporate all disabilities supported by evidence and recognized by the ALJ.[81]  The ALJ met

that duty by incorporating the following limitation in his hypothetical question: "primarily

Spanish-speaking, with a little bit, minimal English understanding and communication ability."[82]

Govea's fourth allegation of error is misplaced because it depends on evidence that does not

relate to the time period for which benefits were denied.  The ALJ's hypothetical question was

---

[78]*Id.* at p. 396.

[79]Docket entry # 14, pp. 7-8.

[80]*See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) ("Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.").

[81]*See Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002); *Bowling*, 36 F.3d at 436.

[82]SSA record, p. 452.

not flawed.

       <u>Whether substantial evidence supports the Commissioner's decision</u>.  Having addressed Govea's allegations of error, the next question is whether substantial evidence supports the Commissioner's decision.  The following substantial evidence supports the Commissioner's decision: (1) the report of physical exam by neurological surgeon Dr. Christopher J. Chaput, six months after Govea's back surgery, reporting a satisfactory follow-up for arthrodesis and instrumentation from L4 through S1, and opining that Govea had complete healing and reached maximum medical improvement;[83] (2) the physical residual functional capacity assessment by Dr. George L. John on March 19, 2002, determining that Govea can lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour day, and sit (with normal breaks) for a total of 6 hours in an 8-hour workday;[84] (3) the worker's compensation impairment rating by Dr. G.M. Ortiz on July 12, 2002, opining that Govea has a 15% whole person impairment; (4) the worker's compensation impairment rating by Dr. Keslie McQuiston-King on November 19, 2002, opining that Govea has a 10% whole person impairment and reporting Govea still has severe low back pain despite treatment and surgery;[85] (5) the report of physical exam by Dr. Mark A. Heard on June 26, 2003, determining that Govea has residual low back pain after fixation of his lumbar spine, that Govea can sit, stand, and move about, but has trouble getting up and down from a sitting to standing

---

[83]*Id*. at pp. 221-22.

[84]*Id*. at pp. 235-40.

[85]*Id*. at 303-05.

position and that he cannot lift and carry objects weighing more than 10 pounds;[86] and (6) the physical residual functional capacity assessment by Dr. S. Spoor on July 30, 2003, determining that Govea can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour day, and sit (with normal breaks) for a total of 6 hours in an 8-hour workday.[87]

### Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Govea's request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[88]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous,

---

[86]*Id.* at pp. 341-43.

[87]*Id.* at pp. 344-52.

[88]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

conclusive or general objections.  A party's failure to file written objections to the proposed

findings, conclusions and recommendations contained in this report shall bar the party from a *de*

*novo* determination by the district court.[89]  Additionally, failure to file timely written objections

to the proposed findings, conclusions and recommendations contained in this report and

recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the

district court.

      **SIGNED** on July 29, 2008.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[89]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).